UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELROY D. CLAY, #258184,

    Plaintiff,

-vs-

    Case No. 12-10140
    District Judge Sean F. Cox
    Magistrate Judge R. Steven Whalen

CHARLES COY, ET AL.,

    Defendants.
                                       /

**REPORT AND RECOMMENDATION**

    On January 12, 2012, Plaintiff Elroy D. Clay, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging that the Defendant Corrections Officers Charles Coy, Jason Grundy and Ronald Koch applied excessive force in violation of the Eighth Amendment. Before the Court are Defendants' Motion for Summary Judgment [Doc. #12] and Plaintiff's Motion for Summary Judgment [Doc. #16][1], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both motions be DENIED.

**I.   FACTS**

    Mr. Clay's claim arises out of an incident where he was in a "strip search cage" while Defendant Corrections Officers were attempting to place him in leg irons. His handwritten complaint is a bit disjointed, but the essential facts that he alleges are that while he was

---

[1] Mr. Clay's pleading [Doc. #16], titled "Motion for Summary Judgment and Answer to Summary Judgment," doubles as his response to the Defendants' motion.

seated and in shackles[2], Defendants Coy and Grundy physically assaulted him. He denies that he was attempting to resist. He claims that to cover up their actions, the Defendants wrote a false misconduct report that accused him of assault. Following a hearing, that misconduct was dismissed.

The Administrative Law Judge's Misconduct Hearing Report dismissing the assault charge against Mr. Clay is attached to the complaint as Exhibit 3. The section titled "Reason for Finding" describes the incident, and reads as follows, in its entirety:

> "According to the two Misconduct Reports, the prisoner was in the strip search cage refusing to have leg irons applied.  Officer Coy says Officer Grundy and he went in cage to stand the prisoner up, and the prisoner grabbed a hold of his right arm and continued to hold it until taken to the ground.  Officer Grundy says they entered cage to stand up the prisoner and the prisoner struck him with his fist in his mid section and was placed on the floor.  In Critical Incident Participant Report Officer Grundy only said when he helped hold the prisoner's right arm he began to resist, he did not mention anything of the prisoner punching him in the mid-section, and it is noted that the prisoner then had hands restrained to his belly chain.  Neither Coy nor Lieutenant Koch indicated anything about the prisoner hitting Grundy with a fist.  It is indicated in the Critical Incident–incident description and Participant Report from Lieutenant Koch that the prisoner refused to have leg irons put on to Officer Lutz and that after they physically intervened with the prisoner and had prisoner on the ground that Officer Lutz applied the leg restraints.  The Critical Incident Report does not list Officer Lutz as staff involved or witnessing incident.  There has not been provided any statement from Officer Lutz.  *The prisoner gave a very long statement, but he was most certainly disputing the allegations and giving an alternative version of events*, and Coy, Grundy and Lieutenant Koch were not questioned by the Hearing Investigator.  Except for the Critical Incident Report, there wasn't any investigation! (*Exclamation point in original*).  The prisoner requested video and the Hearing Investigator at WCC indicated none was available and it is not know[n] what is meant by that, and no further information as to such issue was provided.  This matter is therefore not amenable to a disposition at this point, with the most significant issue being the lack of a statement from Officer Lutz.  The matter is being held in segregation on the 7th business day, and the charge is dismissed." (Emphasis added).

The Report is signed by Administrative Law Judge ("ALJ") D.J. Pallas.

---

[2] At page 3 of his complaint, Mr. Clay states that he was "in handcuffs that's shackled or attached to your waist with belly-chains on."

The Critical Incident Report to which ALJ Pallas refers is appended to Defendants' motion as Exhibit 1. The 16-page Report contains individual statements from Defendants Koch, Coy and Grundy. The individual statements are consistent as to the basic facts alleged, and are fairly summarized in the "Incident Description," section 1 of the main Report. That description, setting forth the Defendants' version of the incident, reads as follows:

> "On June 3, 2010 at 1410 hours Prisoner Elroy Clay 258184 was in the strip search cage already secured in Belly Chains to transfer to LRF. Prisoner Clay was refusing to allow CTO Lutz to secure leg irons on his ankles. Lieutenant Ronald Koch spoke with Clay about his concerns and his refusing to allow the leg irons to be applied. Clay stated that he was not allowing the restraints to be applied and do what you need to do. Lt. Koch ordered Officers Jason Grundy and Charles Coy to stand Clay up against the wall of the strip search area so leg irons could be applied. When Officers Grundy and Coy took hold of Prisoner Clay's arms he began to resist the two Officers. Lt. Koch then ordered Clay to be placed on the floor of the strip search room. Prisoner Clay was then placed on the floor by Officer Grundy taking control of Clay's right arm and Officer Coy took control of Clay's left arm and forced him on the ground face down. Once Clay was secured on the ground he was secured in leg irons by CTO Lutz. Clay was then assisted to his feet and escorted to the intake area by Officers Coy and Grundy and placed in the transportation van for transfer. Clay was secured in the transportation van for transfer at 1418 hours without further incident. Lt. R. Koch was the on scene Supervisor during the entire incident. Prisoner sustained no injuries."

Defendants have also submitted, as Exhibit 2, Mr. Clay's grievance forms related to this incident. In his Step I grievance, Mr. Clay states, "Officer Grundy...physically assaulted me by choking me and beating me, simply because I requested a copy of my property sheet. Not only that but Officer or Lieutenant Koch instructed Coy and Grundy to hurt me as I sat in the strip cage in belly-chains and handcuffs."

As was the case with the misconduct charge, the Defendants have not submitted an affidavit or any other statement from Officer Lutz, who, according to Lieutenant Koch's statement in the Critical Incident Report, witnessed the events. *See* Defendants' Exhibit 1.

-3-

In their motion, Defendants argue that there was no Eighth Amendment violation because "[t]he evidence shows that force was applied against Plaintiff in a good-faith effort to maintain or restore discipline." *Defendants' Brief* [Doc. #12], p. 4.

Mr. Clay has submitted his own notarized affidavit with his response [Doc. #16]. He states that he "was threatened, choked, closed-lined from the back of his neck, punched in his right eye and thrown into segregation." He states that he was "sitting down in a locked cage as instructed by Officer Lutz with my handcuffs and belly-chains on," that he "was sitting down in standard procedure for Lutz to apply leg-irons," and that "there never was a refusal to have leg-irons applied, because I was sitting as Officer Lutz instructed to have the leg irons applied."

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. DISCUSSION

Claims of excessive force against convicted prisoners by prison guards are analyzed under the Eighth Amendment's cruel and unusual punishment clause. *Cornwell v. Dahlberg,* 963 F.2d 912, 915-916 (6th Cir.1992). In *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Supreme Court held that what is necessary to establish unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. 475 U.S. at p. 320. It concluded that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21.

*Whitley* arose out of a prison disturbance situation. In *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Court extended the rule to single-prisoner incidents. ("[W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). *Id*. at 6.

To sustain an Eighth Amendment/Excessive Force claim, a prisoner must ordinarily show more than a *de minimis* injury. *Id*. at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999)(en banc). However, where force is maliciously or sadistically applied, no injury need be shown. In *Hudson*, the Court explained:

> "Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount

to a knowing willingness that it occur' .... In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' *The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it .... When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated .... This is true whether or not significant injury is evident.*"   *Hudson*, 503 U.S. at 7 (emphasis added).

In *Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1177, 175L.Ed.2d 995 (2010), the Supreme Court reiterated "*Hudson*'s directive to decide excessive force claims based on the nature of the force rather than the extent of the injury...." *See also Williams v. Curtin*, 631 F.3d 380 (6th Cir. 2011).[3]

In this case, the Defendants' request for summary judgment must be denied because there is a clear, disputed question of fact as to whether the physical force used against Mr. Clay was, as Defendants allege, necessary to enforce compliance with a legitimate request to allow leg irons to be applied, or, as Mr. Clay states in his affidavit, the force was applied gratuitously, even though he was compliant with the Officers' request.

The Defendants rely on *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992), a case where Corrections Officers used a "stun gun" on a recalcitrant inmate. The Court rejected an Eighth Amendment claim, finding that the Officers' use of force was necessary to enforce prison discipline because the plaintiff consistently resisted their orders by kicking his cell door and shouting over a period of at least seven hours. There is, however, an important distinction between *Caldwell* and the present case. In *Caldwell*, the plaintiff admitted that he engaged in disruptive and disobedient behavior. The Sixth Circuit noted as follows:

---

[3] While Defendants claim that there was no physical injury to the Plaintiff, Mr. Clay states in a supplemental affidavit [Doc. #17] that he suffered a back injury as a result of the incident. Neither Plaintiff nor Defendants have submitted any medical reports.

> *Caldwell stated* that every time his request to be let out of the isolation cell was denied he would kick the door and shout for the jailer. *Caldwell stated* that he would shout for a few minutes and kick the cell door, then pause and repeat this conduct. Deputy jailer Andrew Sutherland informed Caldwell that he would be placed in a straitjacket if he conti nued to shout and kick the cell door. Nonetheless, Caldwell continued this conduct into the late evening on July 15. *Id.* at 596-597. (Emphasis added).

Unlike the present case, Caldwell's claim was not that *no* force was necessary, but that "the manner in which the stun gun was used here was a per se violation of the Eighth Amendment because the officers were not trained or authorized to use the stun gun." *Id*. at 600.

Here, in contrast to *Caldwell*, Mr. Clay denies that he was disruptive or uncooperative in any way. The theory that he in fact was resistant, and that physical force was necessary and appropriately applied in order to enforce discipline, is completely dependent on the credibility of the Defendants. The ALJ's rejection of the assault accusation against Mr. Clay, *see* Complaint [Doc. #1], Exhibit 3, and the apparent contradiction between the misconduct charge alleging that Mr. Clay punched Officer Grundy and the Critical Incident Report, which contains no mention of Mr. Clay punching anyone, *see* Defendants' Exhibit 1, underscore the necessity that a trier of fact resolve this basic credibility issue.

This issue of material fact also defeats the Defendants' defense of qualified immunity. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *See also Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(rejecting the mandatory nature of the two-step sequential analysis set forth in *Saucier*,

and commending the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis).

If a trier of fact accepts Mr. Clay's version of the incident, then an Eighth Amendment violation based on excessive force will have been established. Furthermore, the right of a prisoner to be free from gratuitous violence that does not further a legitimate penalogical interest was clearly established at the time of the incident in question. *See Hudson v. McMillian, supra*.

Because the case hinges on a credibility contest, summary judgment must be denied to both the Plaintiff and the Defendants.

### IV.   CONCLUSION

For these reasons, I recommend that both Defendants' Motion for Summary Judgment [Doc. #12] and Plaintiff's Motion for Summary Judgment [Doc. #16] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20)

pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<b>s/ R. Steven Whalen</b><br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: February 25, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 25, 2013.

| | |
|---|---|
| Elroy Clay, #258184<br>Richard A. Hanlon Correctional Facility<br>1728 W Bluewater Hwy<br>Ionia, MI 48846-8553 | Johnetta M. Curry-Williams<br>Case Manager |